# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**ROBERT L. TATUM,**
**on behalf of Blacks (African Americans),**

        Plaintiff,

        -vs-                    Case No. 15-CV-453

**UNITED STATES OF AMERICA,**

        Defendant.

## DECISION AND ORDER

The plaintiff has filed a motion to alter, amend, or reconsider the Court's July 8, 2015, order dismissing this case for lack of subject matter jurisdiction, and denying his motion for three-panel judge/class certification/appointment of counsel. For the reasons explained below, the Court will deny the plaintiff's motion for reconsideration.

Altering or amending a judgment pursuant to Rule 59(e) is permissible when there is newly discovered evidence or where there has been a manifest error of law or fact. *Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006) (citing *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000)); *Cosgrove v. Bartolotta*, 150 F.3d 729, 732 (7th Cir. 1998). A "manifest error" is a "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro.*

*Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (citation omitted). Whether to grant a motion to amend judgment "is entrusted to the sound judgment of the district court." *In re Prince*, 85 F.3d 314, 324 (7th Cir. 1996).

The Court screened the complaint under 28 U.S.C. § 1915A and determined that it lacked subject matter jurisdiction over the plaintiff's claims. The complaint sought to bring a class action for damages as the result of slavery on behalf of all African-American Black people born in the United States. The complaint also sought damages for two breaches of contract in which the United States allegedly failed to fulfill the written and verbal contract "to provide Blacks '40 Acres & a Mule' as Compensation for slave labor and for the routine and systematic denial of contractual rights secured to Blacks under the U.S. Constitution." (ECF No. 1 at 6.)

In determining that the plaintiff lacked standing to bring these claims, the Court reasoned as follows:

> In *Cato v. United States*, 70 F.3d 1103, 1105 (9th Cir. 1995), descendants of enslaved African-Americans filed a complaint against the United States government seeking damages due to the enslavement of, and subsequent discrimination against, African-Americans. The plaintiffs in *Cato* alleged injuries based on "disparities in employment, income, and education" between African-Americans and other racial groups. *Id.* at 1109. The *Cato* court found that such allegations were insufficient to establish an injury personal to

the plaintiffs so as to establish the plaintiffs' standing; rather, such injuries were "a generalized, class-based grievance . . . ." *Id.* Other courts faced with similar complaints have also found that those plaintiffs had failed to establish their standing to litigate claims based on continuing injuries alleged to be the result of slavery. *See, e.g., Bell v. United States,* No. Civ. A. 301CV0338D, 2001 WL 1041792, at \*2 (N.D. Tex. Aug. 31, 2001) (plaintiff lacked standing to file suit against United States government seeking damages for the enslavement of African-Americans); *Bey v. United States DOJ,* No. 95 CIV 10401, 1996 WL 413684, at \*1 (S.D. N.Y. July 24, 1996) (same); *Langley v. United States,* No. C 95-4227, 1995 WL 714378, at \*2 (N.D. Cal. Nov. 30, 1995) (same); *Himiya v. United States,* No. 94 C 4065, 1994 WL 376850, \*2 (N.D. Ill. July 15, 1994) ("Although it is extremely regrettable that this country's history, as well as the history of many other countries, includes a significant history of slavery, the plaintiff does not have proper standing under the law to recover damages for this reprehensible time period."); *see also Long v. United States*, Civil Action No. 1:06CV-P176-M, 2007 WL 2725973 (W.D. Ky. 2007); *Hamilton v. United States*, Civil Action No. 1:10-CV-808, 2012 WL 760691 (E.D. Tex. 2012).

The direct victims of slavery are the plaintiff's ancestors. As the Seventh Circuit Court of Appeals explained:

> [T]here is a fatal disconnect between the victims and the plaintiffs. When a person is wronged he can seek redress, and if he wins, his descendants may benefit, but the wrong to the ancestor is not a wrong to the descendants. For if it were, then (problems of proof to one side) statutes of limitations would be toothless. A person whose ancestor had been wronged a thousand years ago could sue on the ground that it was a continuing wrong and he is one of the victims.

*In re African-American Slave Descendants Litig.*, 471 F.3d 754, 759 (7th Cir 2006). The plaintiff has failed to demonstrate

> the requisite standing to invoke this Court's jurisdiction. *See e.g., Cato*, 70 F.3d at 1109-10 (finding that the plaintiff does not "have standing to litigate claims based on the stigmatizing injury to all African Americans caused by racial discrimination" and that "she does not trace the presence of discrimination and its harm to the United States rather than to other persons or institutions").
>
> Given that the plaintiff lacks standing on his own, he does not have standing to represent the interest of all African Americans born in the United States. Even if the plaintiff had standing to represent all African Americans, as a pro se litigant the plaintiff may only represent himself. *See Green v. Benden*, 281 F.3d 661, 665 (7th Cir. 2002); *see also* 28 U.S.C. § 1654.

(Dkt. No. 9 at 7-8.)

In support of his motion for reconsideration, the plaintiff contends that Blacks have standing in this matter, based on the principle of "transferred intent" for intentional tortfeasors. He contends that the injuries suffered by Blacks today are "concrete, actual, and imminent" and "invade legally protected interests such as equal protection of law, rights against physical, emotional, economic harms, etc., which meet the definition of 'Harm to the Person' entitling one to recover damages for those harms." (Docket No. 11 at 2.) According to the plaintiff,

> Blacks (of today's) injuries did not actually occur with the previous generations, those generations suffered their own injuries and damages, but the intent of harming those earlier generations was transferred to later Blacks, both those intended to be later harmed by the conduct of the U.S. and

> those harms unforeseeable, and Blacks set forth an illustration of their own to provide their position on transferred intent: Parties of the U.S. take a freshly arrived boatload of Blacks to a common area bound and shackled during the initial slave trading period. The U.S. takes a random sampling of the Blacks from the boatload, then intentionally and severely beats, maims, and/or kills the random sampling, with the intent to cause fear of disobedience and apprehension of imminent offensive contact in those Blacks witnessing the atrocities, causes that fear and apprehension – an assault on Blacks (or unlawful imprisonment by threat of force). Those Blacks then teach their children to fear that conduct, and later those children have that apprehension of imminent offensive contact upon being in the U.S.'s presence (or submits to unlawful imprisonment without disobeying). The U.S. could be liable to those children for assault (or unlawful imprisonment) under transferred intent.

(Docket No. 11 at 3.)

The plaintiff cites to the Restatement (Third) in support of his contention that he and all Black people have standing based on the transferred intent doctrine. However, the plaintiff's illustration of the United States' liability does not accurately describe the doctrine. The Restatement provides:

> The doctrine of transferred intent, specific to intentional torts, does some of the work of expanding the scope of liability for an intentional tortfeasor, although it is not formally an aspect of scope of liability. Instead, it is treated as an aspect of whether the intent element is satisfied and provides that, if an actor has the requisite intent to cause harm to one person, that intent will be "transferred" if the actor harms another person, even if that other person is unforeseeable. Transferred

- 5 -

> intent is particularly applicable in the trespassory torts, which are the intentional torts most likely to involve physical harm, the primary type of injury covered by this Restatement.

Restatement (Third) of Torts: Phys. & Emot. Harm § 33 (2010).

The plaintiff's motion for reconsideration does not change the Court's analysis that it lacks subject matter jurisdiction over his claims. The plaintiff may not proceed on these claims, whatever constitutional or statutory provision he brings them under. Also, the plaintiff has not shown that this Court should transfer his case to the United States Supreme Court.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT** the plaintiff's motion for reconsideration (ECF No. 11) is **DENIED**.

Dated at Milwaukee, Wisconsin, this 17th day of September, 2015.

**BY THE COURT:**

*/s/ Rudolph T. Randa*

**HON. RUDOLPH T. RANDA**
**U.S. District Judge**

- 6 -